**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BOB ABRAMS, JANICE SMART,<br>BOB ABRAMS as personal representative for<br>the Estate of VIRGINIA E. ABRAMS, deceased,<br>ANGIE SUNDHAUSEN as personal<br>representative for the Estate of<br>MATTHEW MURPHY, deceased, and<br>ANGIE SUNDHAUSEN as personal<br>representative for the Estate of<br>MARLEEN E. MURPHY, deceased,<br><br>    Plaintiffs,<br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br>FEDEX CORPORATION, FEDEX FREIGHT,<br>ASLLAN NMI PINO, and HARD DRIVE<br>EXPRESS, INC.,<br><br>    Defendants. | Docket No.: 3:19-cv-01391<br><br><br>PLAINTIFFS DEMAND<br>A TRIAL BY JURY |

## SECOND AMENDED COMPLAINT

Plaintiffs BOB ABRAMS, JANICE SMART, BOB ABRAMS as personal representative for the Estate of VIRGINIA E. ABRAMS, deceased, ANGIE SUNDHAUSEN as personal representative for the Estate of MATTHEW MURPHY, deceased, and ANGIE SUNDHAUSEN as personal representative for the Estate of MARLEEN E. MURPHY, deceased by their attorneys, MORELLI LAW FIRM, PLLC and CATES MAHONEY, LLC, respectfully allege upon information and belief as follows:

### NATURE OF THE CASE

1.     This is a civil action for personal injuries suffered by Plaintiffs BOB ABRAMS, JANICE SMART, BOB ABRAMS as personal representative for the Estate of VIRGINIA E.

ABRAMS, deceased, ANGIE SUNDHAUSEN as personal representative for the Estate of

MATTHEW MURPHY, deceased, and ANGIE SUNDHAUSEN as personal representative for

the Estate of MARLEEN E. MURPHY, deceased, (collectively "Plaintiffs") being brought

against Defendants FEDEX GROUND PACKAGE SYSTEM, INC., FEDEX CORPORATION,

FEDEX FREIGHT (collectively "FedEx"), ASLLAN NMI PINO, and HARD DRIVE

EXPRESS, INC. (referred to hereinafter collectively as "Defendants").

2.      This action arises out of a tragic and fatal motor vehicle accident which occurred

on July 20, 2019 on Interstate 70 eastbound in Effingham County, State of Illinois, when a

FedEx tractor-trailer being operated by defendant ASLLAN NMI PINO collided with the rear

end of the vehicle in which Plaintiffs and Plaintiffs' decedents were traveling.   As a result of the

Defendants' negligence, Plaintiffs and Plaintiffs' decedents were caused to suffer severe and

permanent injuries, including death.

## PARTIES

3.      Plaintiff Bob Abrams is an individual and citizen of the state of Missouri and

brings this case as an individual and in his capacity as personal representative for the Estate of

Virginia E. Abrams, deceased.

4.      Plaintiff Janice Smart is an individual and citizen of the state of Missouri.

5.      Angie Sundhausen as personal representative for the Estate of Matthew Murphy,

deceased, and as personal representative for the Estate of Marleen E. Murphy, deceased is an

individual and citizen of the state of Missouri.

6.      Defendant FEDEX GROUND PACKAGE SYSTEM, INC. (hereinafter "FedEx

Ground") is a wholly-owned subsidiary of FedEx Corporation.  Defendant FedEx Ground is

headquartered and has its principal place of business in Pittsburgh, Pennsylvania.  FedEx Ground

has an average daily volume of over 8.5 million package deliveries using over 70,000 motorized vehicles, including tractor-trailers.

7.      Defendant FEDEX CORPORATION is a worldwide corporation whose headquarters and principal place of business is located in Memphis, Tennessee.  FedEx Corporation has stores and distribution centers in over 220 countries and territories throughout the world.  FedEx Corporation has an average daily volume of over 15 million shipments each business day.  FedEx Corporation provides a large portion of those shipments via the 180,000 motorized vehicles, including tractor-trailers, that it owns and operates.

8.      Defendant FEDEX FREIGHT is a wholly-owned subsidiary of FedEx Corporation.  Defendant FedEx Freight is headquartered and has its principal place of business in Memphis, Tennessee.  FedEx Freight has an average daily volume of over 110,000 shipments using over 25,000 motorized vehicles, including tractor-trailers, throughout the United States, Canada, Mexico, Puerto Rico, and the U.S. Virgin Islands.

9.      Defendant ASLLAN NMI PINO is an individual and upon information and belief a citizen of the State of Michigan.

10.      Defendant HARD DRIVE EXPRESS, INC. ("Hard Drive") is a corporation with its principal place of business in the State of Michigan.  Hard Drive was the registered owner of the subject tractor-trailer on the date of the accident.

## VENUE AND JURISDICTION

11.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332, in that the amount of controversy exceeds seventy-five thousand dollars ($75,000) and Plaintiffs are citizens of states which are different from the states where Defendants reside, are incorporated and have their principal places of business.

12.     Venue is proper in this district, because the accident occurred in Jackson Township, County of Effingham, State of Illinois, which falls within this Court's jurisdiction.

## FACTUAL ALLEGATIONS

### The Plaintiffs

13.     The Plaintiffs BOB ABRAMS, JANICE SMART, and the Plaintiffs' decedents VIRGINIA E. ABRAMS, MATTHEW MURPHY, and MARLEEN E. MURPHY were family members who had a very close relationship to one another.  Specifically, BOB ABRAMS and VIRGINIA E. ABRAMS were married at the time of the accident.  MATTHEW MURPHY and MARLEEN E. MURPHY were also married at the time of the accident.  JANICE SMART, MATTHEW MURPHY and VIRGINIA ABRAMS were siblings.

14.     The Plaintiffs and Plaintiffs' decedents were all part of a close-knit family.  They all resided close to each other in St. Louis, Missouri and frequently took vacations together.  On the date of the accident, the family members were planning to drive from St. Louis, Missouri to Niagara Falls for a vacation.

### The FedEx Defendants

15.     Each business day, FedEx delivers more than 10 million packages to more than 220 countries and territories using more than 100,000 fleet vehicles, including its tractor-trailers, and employs more than 400,000 team members at hundreds of locations around the world.

16.     For the fiscal year ending on March 2019, Defendant FedEx Corporation had annual revenue of approximately $69.7 Billion.

17.     For the fiscal year ending March 2019, Defendant FedEx Ground had annual revenue of approximately $20.5 Billion.

18.     For the fiscal year ending March 2019, Defendant FedEx Freight had annual revenue of approximately $7.6 Billion.

19.     According to FedEx's own website, "safety above all" is allegedly a core FedEx belief and it is integrated into everything FedEx does.  Allegedly, ensuring safety is "absolutely essential" and a job that FedEx takes "extremely seriously."  Allegedly, FedEx has "high standards" when it comes to safety.

20.     According to FedEx's website, FedEx sets exacting safety standards and protocols, many of which exceed Department of Transportation ("DOT") requirements.

21.     According to FedEx's website, FedEx annually invests millions of dollars in equipment and technology to prevent injuries and accidents on the ground.

22.     According to FedEx's website, FedEx understands that they "can't rest when it comes to safe operating procedures."

**The Accident**

23.     On the morning of July 20, 2019, the Plaintiffs and Plaintiffs' decedents were planning to drive from St. Louis, Missouri to Niagara Falls for a vacation.

24.     It was a clear day, and temperatures were above ninety degrees.

25.     On July 20, 2019, Asllan Nmi Pino was operating a FedEx tractor-trailer in the course of his employment.

26.     On July 20, 2019, Defendant Hard Drive was the registered owner of the subject tractor-trailer.

27.     On July 20, 2019, Mr. Pino's employment consisted of driving a 2019 Peterbilt truck-tractor and Hyundai semitrailer combination vehicle (the "FedEx Truck").

28.     At approximately 11:00 a.m. on July 20, 2019, both Plaintiffs' vehicle and the FedEx Truck were traveling on Interstate 70 eastbound at mile post 89 and approaching a construction zone.

29.     The eastbound and westbound lanes of traffic were separated by a concrete median barrier.

30.     A 2020 Freightliner truck driven by Jamie Hugh Smith ("Freightliner") had come to a complete stop in traffic directly in front of Plaintiffs' vehicle.

31.     Plaintiffs' vehicle approached the stopped traffic and began to slow down behind the Freightliner, ultimately coming to a complete stop in traffic.

32.     The FedEx Truck was traveling on I-70 eastbound approaching the rear of Plaintiffs' vehicle.

33.     The FedEx Truck was traveling at an accelerated rate of speed.

34.     The driver of the FedEx Truck, Asllan Nmi Pino, was not paying attention nor keeping a proper lookout as he approached the rear of Plaintiffs' vehicle.

35.     Defendant Asllan Nmi Pino, at some point before impacting Plaintiffs' vehicle, realized traffic was coming to a stop or was stopped in front of him.

36.     Upon information and belief, defendant Pino then applied the brakes of the FedEx Truck and swerved to the left.

37.     The FedEx Truck was unable to avoid Plaintiffs' vehicle, struck the rear of Plaintiffs' vehicle, and pushed the Plaintiffs vehicle into the rear of the Freightliner.

38.     The FedEx Truck then proceeded to strike the concrete median barrier.

39.     The FedEx Truck pushed the concrete median barrier into the westbound lanes.

40.     Plaintiffs' vehicle became lodged between the FedEx Truck and the utility trailer being pulled by the Freightliner.

41.     Plaintiffs' vehicle eventually came to rest facing in a southwest direction.

42.     The Plaintiffs' vehicle was decimated as a result of the accident.

43.     The Plaintiffs and Plaintiffs' decedents were unable to escape the vehicle.

44.     As they remained severely injured inside the vehicle, it took first responders approximately four hours to extract Plaintiffs and Plaintiffs' decedents from the vehicle.

45.     The extraction took particularly long both because of how severely damaged Plaintiffs' vehicle was, and because of the extremely hot temperatures outside.

46.     Plaintiff Bob Abrams was extracted from the vehicle and flown by helicopter to a hospital in Springfield, Illinois.

47.     Plaintiff Janice Smart was extracted from the vehicle and taken by the air evacuation life team to a hospital in Springfield, Illinois.

48.     Virginia E. Abrams, Matthew Murphy, and Marleen E. Murphy were all extracted from the vehicle and subsequently pronounced deceased.

49.     Defendant Asllan Nmi Pino was issued two citations by the police at the scene of the accident.

50.     The first citation issued to Pino was for his failure to reduce his speed prior to the accident.

51.     The other citation issued to Pino was for operating a commercial motor vehicle as an unqualified driver pursuant to 49 CFR § 391.11.

52.     Defendant Pino does not understand the English language sufficiently, does not read English fluently, and only speaks English a "little bit."

7

53.     From the time Mr. Pino began driving for FedEx in 2012 through the time of the accident, he could not read or speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals, to respond to official inquiries and to make entries on reports and records, as required by 49 CFR §391.11(b)(2).

54.     Pino—a native Albanian speaker—was unable to communicate in English with police officers at the scene of the accident.

55.     After appearing at a formal court hearing where he was represented by counsel, Pino was convicted of being unqualified to drive commercial motor vehicles pursuant to 49 CFR § 391.11.

**The Willful and Wanton Conduct of FedEx Ground and Hard Drive.**

56.     Beginning in 2013, FedEx Ground began giving all of its truck drivers a one-time English language assessment or "driver fitness assessment" (hereinafter the "English Test") in an attempt to verify that each of its drivers, including Defendant Pino, were qualified to drive commercial motor vehicles pursuant to 49 CFR § 391.11 of the Federal Motor Carrier Safety Rules.

57.     49 CFR § 391.11(b)(2) requires that "a person shall not drive a commercial motor vehicle" unless he "[c]an read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records."

58.     The sole purpose of the FedEx Ground English Test was to determine if its drivers could read and speak the English language sufficiently to comply with 49 CFR § 391.11.

59.     If a driver could not pass the English Test, he or she was not supposed to be permitted to drive a commercial motor vehicle for FedEx Ground.

60.     Once a particular driver had taken and passed the English Test, that driver would not have to take the English Test ever again.

61.     Beginning in 2013, taking and passing the English Test was a FedEx Ground requirement for all of its commercial truck drivers.

62.     Hard Drive did not require its employees to take any type of English language assessment test.

63.     All English Tests, including Pino's, were administered by a panel of three assessors, all FedEx Ground employees, who were specifically trained by FedEx Ground regarding how to properly administer the English Test.

64.     The FedEx Ground English Test consisted of a list of nine (9) possible questions that were predetermined by FedEx Ground.

65.     During the English Test, each FedEx Ground driver, including Pino, was verbally asked a total of five (5) questions from the list of nine (9).

66.     The assessors were required to ask all drivers, including Pino, question 1 ("show me your driver's license please") and question 2 ("can I see your medical card please?  If not, why") from the list, but could select any additional three (3) questions at random.

67.     While giving the English Test, if there were any issues with a driver's response to a particular question, the assessor could describe the issue in a notes section on their evaluation form and the driver's score could be negatively affected.

68.     Each assessor would individually grade the driver's responses to each question on a scale of one (1) to five (5) – one (1) being the lowest score and five (5) being the highest.

69.     Each assessor would then record the driver's final grade or "average assessment" on their evaluation form, which was the driver's average score received on all five (5) questions.

70.     The average of the three final grades or "average assessments" as determined by each assessor was then calculated in order to get a driver's total average assessment score.

71.     Each driver's total average assessment score determined whether that particular driver passed or failed the English Test.

72.     A passing grade on the English Test was a total average assessment score of at least three (3).

73.     The results of each driver's English Test were reported to FedEx Ground management who would make the ultimate determination whether a driver passed or failed.

74.     If a driver failed the English Test, he would have been put on "inactive safety" status and prohibited from driving commercial motor vehicles for FedEx Ground.

75.     Pino began driving tractor-trailers for FedEx Ground in September 2012.

76.     Pino was not given his English Test by FedEx Ground until July 2, 2013.

77.     Despite taking the English Test, Pino was not aware he was required to read, speak, and understand English in order to be qualified to drive commercial motor vehicles.

78.     The week Pino was tested was the first week FedEx Ground began administering the English Test to its drivers.

79.     The English Test was given to all of the approximately 120-150 active drivers based out of the Toledo facility, where Pino was based, in that same week.

80.     The assessors at the Toledo facility began administering the English Test to the drivers within about one-day after completing their own training on how to administer the test.

81.     The training given by FedEx Ground to the assessors at the Toledo facility did not last more than one day.

82.     In addition to the two required questions, the assessors asked Pino: Question 4 ("where are you driving today?"); Question 8 ("did you perform your pre-trip inspection before you started driving today?"); and Question 9 ("do you use time cards or log books?").

83.     In response to *both* Questions 8 and 9, Pino received a failing score of one (1) from two of the three assessors administering his English Test – the lowest possible score.

84.     In response to Question 8, the first assessor even wrote in his notes section that Pino "*could not answer question.*"

85.     While the first assessor neglected to write down Pino's "average assessment" score – the average of the five scores received on each individual question – if calculated properly, the "average assessment" score given to Pino by the first assessor would have been a failing grade of 2.2.

86.     Pino's second assessor crossed out and changed his original assessment score for three different questions—and five times total—giving Pino a higher score in each instance, and ultimately resulting in an "average assessment" score of exactly three (3) – a passing grade.

87.     The second assessor originally gave Pino a total average assessment score of 2.2 – a failing grade – but crossed that out and raised the score to a passing grade of three (3).

88.     Pino's third assessor neglected to give Pino any score or write any notes for Questions 1 or 2, but still gave Pino an "average assessment" score of three (3).

89.     In the end, the first assessor gave Pino an average assessment score of 2.2, the second assessor gave Pino an average assessment score of three (3), and the third assessor gave Pino an average assessment score of three (3).

90.     Accordingly, despite all the scoring changes and incomplete information described above, based on the written results of the English Test given to Pino on July 2, 2013, Pino still only received a total average assessment score of approximately 2.73 – *a failing grade*.

91.     Despite clearly failing the English Test in July 2013, Pino was not put on "inactive safety" status and he was still permitted to drive tractor-trailers for FedEx Ground for approximately six more years up until the date of the subject accident.

92.     Pino was never re-tested on the English Test by FedEx Ground.

93.     Despite being on notice that Pino failed the English Test, FedEx Ground never took any additional measures to ensure that Pino was able to read, speak or understand the English language sufficiently to render him a qualified driver under 49 CFR § 391.11.

94.     When hiring Defendant Pino in 2015, Defendant Hard Drive knew or should have known that Defendant Pino was an unqualified driver because he failed the English Test given to him by FedEx Ground.

95.     Despite having knowledge that Defendant Pino failed the English Test, Defendant Hard Drive never gave him any further testing, training or review, and instead retained him as an employee and permitted him to regularly operate tractor trailers continuously from the time he was hired up and until the date of the subject crash.

### First Count
### Negligence - (Against all Defendants)

96.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

97.     On July 20, 2019, relatives BOB ABRAMS, VIRGINIA E. ABRAMS, JANICE SMART, MATTHEW MURPHY, and MARLEEN E. MURPHY were all traveling in a 2019 GMC Yukon motor vehicle.

98.    On July 20, 2019, the 2019 GMC Yukon was being operated by decedent MATTHEW MURPHY.

99.    On July 20, 2019, defendant Asllan Nmi Pino was driving a 2019 Peterbilt truck-tractor and Hyundai semitrailer combination vehicle (the "FedEx Truck"), which was owned by defendant Hard Drive.

100.    Mr. Pino was operating the FedEx Truck in the regular course of his employment for FedEx and/or Hard Drive.

101.    Based upon the doctrine of *respondeat superior*, Defendants FedEx and Hard Drive are liable for the aforesaid negligent acts and/or omissions of its agent, servant and employee, Asllan Nmi Pino.

102.    Defendants FedEx and Hard Drive had the right to control the manner of defendant Asllan Nmi Pino's work performance.

103.    At the time of the accident, the nature of the work being performed by Asllan Nmi Pino was closely aligned with the general business of Defendants FedEx and Hard Drive.

104.    Defendants FedEx and Hard Drive had the right to discharge Asllan Nmi Pino.

105.    Defendants FedEx and Hard Drive controlled the method of payment to Asllan Nmi Pino.

106.    Defendants FedEx and Hard Drive provided Asllan Nmi Pino with the necessary tools, materials, and equipment in order to complete his assigned tasks.

107.    Accordingly, Defendants FedEx and Hard Drive are vicariously liable for the negligence of their agent, defendant Asllan Nmi Pino.

108.    On July 20, 2019, while BOB ABRAMS, VIRGINIA E. ABRAMS, JANICE SMART, and MARLEEN E. MURPHY were lawful passengers in the vehicle being operated by

MATTHEW MURPHY, the Plaintiffs and defendant Asllan Nmi Pino were involved in a motor vehicle collision on Interstate 70 eastbound at mile post 89, in Effingham County, State of Illinois, when the FedEx Truck being operated by Defendant Pino collided with the rear of Plaintiffs' stopped vehicle.

109.    FedEx, Asllan Nmi Pino, and Hard Drive were all careless and negligent in the ownership and operation of its motor vehicle, which caused Plaintiffs and Plaintiffs' decedents to suffer severe and permanent physical, emotional, psychological, and economic injuries.

110.    The automobile collision at issue was caused by the negligence and carelessness of the Defendants in the following respects:

     a.  Defendant Pino operated the vehicle in a careless and reckless manner;

     b.  Defendant Pino failed to cease operating the vehicle under hazardous road conditions;

     c.  Defendant Pino failed to properly operate the vehicle under the hazardous road conditions;

     d.  Defendant Pino failed to keep a careful lookout;

     e.  Defendant Pino failed to attend to the roadway;

     f.  Defendant Pino failed to reduce the rate of speed to avoid an accident;

     g.  Defendant Pino failed to heed warnings, including audible warnings, in the truck immediately prior to the collision;

     h.  Defendant Pino operated the vehicle at an excessive rate of speed under the circumstances;

     i.  Defendant Pino failed to comply with applicable state and federal regulations regarding the commercial operate of tractor-trailer units; and

    j.   Such further negligent and careless acts and omissions as the evidence and discovery will reveal.

111.    The conduct of Defendants FedEx Ground and Hard Drive was independently negligent for their actions in hiring and/or retaining Defendant Pino, an unqualified driver, and/or entrusting a commercial motor vehicle to Pino, despite knowing, or being charged with the knowledge, that Pino was at all relevant times unfit and unqualified to drive a commercial motor vehicle pursuant to 49 CFR § 391.11.

112.    At all times relevant, in breach of their duties, FedEx Ground and Hard Drive, by and through their duly authorized agents, servants and/or employees, including managerial employees acting within the scope of their employment, were negligent in one or more of the following respects:

    a.   failed to implement an adequate procedure in order to ensure that all of their drivers, including Pino, were qualified to drive commercial motor vehicles pursuant to 49 CFR § 391.11;

    b.   failed to ensure that Pino was a qualified driver pursuant to 49 CFR § 391.11;

    c.   hiring Pino despite the fact that he was not a qualified driver pursuant to 49 CFR § 391.11;

    d.   failed to adequately carry out the procedure that they did implement— administering the English Test to drivers and putting drivers who fail on "inactive safety" status—when they gave Pino the English Test, he failed, but was retained anyway, not put on "inactive safety" status, and permitted to drive commercial motor vehicles for more than six years before this accident;

    e.   failed to terminate Pino's employment prior to the date of the accident, despite being on notice as early as July 2013 that Pino was an unqualified driver and unfit pursuant to 49 CFR § 391.11;

    f.   entrusting a commercial motor vehicle to Pino despite knowing, or being charged with the knowledge, as early as July 2013, that Pino was unfit and/or unqualified to drive a commercial motor vehicle pursuant to 49 CFR § 391.11.

113.    At all times mentioned herein, Defendants owed a duty to Plaintiffs and others to exercise the highest degree of care in the operation of the motor vehicle.

114.    At all times relevant, FedEx Ground and Hard Drive had a duty not to hire and/or retain individuals unqualified or unfit for employment.

115.    The acts and omissions as set forth herein constituted violations of the Illinois Complied Statutes regarding the regulation of traffic as set forth with more specificity in Chapter 625 of the Illinois Compiled Statues which include, but are not limited to 625 ILCS. §§ 11-601 and §§ 11-605.1.

116.    The acts and omissions as set forth herein constituted violations of the Federal Motor Carrier Safety Regulations as set forth in Title 49 of the Code of Federal Regulations which include, but are not limited to 49 CFR § 392.6 and § 391.11.

117.    The subject statutes, codes, regulations, and the above provisions are designed to protect Plaintiffs and members of the pubic generally from the hazards that arise from the operation of motor vehicles.

118.    Plaintiffs are within the class of persons protected by the provisions enumerated above and all were designed to prevent the injuries Plaintiffs sustained.

119.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Plaintiffs' decedents were caused to sustain severe and permanent painful bodily injuries, including, but not limited to death, emotional, psychological, and economic injuries.

120.    As a further direct and proximate result of one or more of the foregoing negligent acts or omissions by the Defendants' agent, servant and employee, Asllan Nmi Pino, while acting within the scope of his employment for FedEx and/or Hard Drive, the Plaintiffs sustained severe and traumatic injuries, including death.

121.    As a direct and proximate result of the injuries sustained by Plaintiffs' and Plaintiffs' decedents in the collision, they have been incapacitated from pursuing usual employment and other activities, may be left with disabilities that will in the future similarly incapacitate them and cause them pain and suffering, and may require medical treatment.

122.    The negligence and carelessness of the Defendants as described above showed gross negligence, a complete indifference to or a conscious and wanton disregard for the safety of the Plaintiffs' and others, thereby justifying an award of punitive damages in such sum as will serve to punish Defendants and deter Defendants, and others, from like conduct in the future.

123.    Plaintiffs respectfully request that this Court enter judgment on behalf of the Plaintiffs and against the Defendants, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), for the injuries and damages sustained by the Plaintiffs, and for costs of suit incurred herein, for pre- and post-judgment interest as provided by law, for punitive damages, and for such other or further relief as the Court deems just.

**Second Count**
**Wrongful Death**
**(VIRGINA E. ABRAMS, MATTHEW MURPHY, MARLEEN E. MURPHY)**

124.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

125.    Plaintiffs bring this cause of action pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1 *et seq*. and seeks all damages allowed pursuant to that Act.

126.    As a further direct and proximate result of one or more of the foregoing negligent acts or omissions by the Defendants, Plaintiffs' decedents, VIRGINIA E. ABRAMS, MATTHEW MURPHY, and MARLEEN E. MURPHY, sustained great bodily injury, which resulted in their deaths.

127.    At the time of her death, VIRGINIA E. ABRAMS was survived by her husband, Plaintiff BOB ABRAMS, who has been damaged as a result of the death of VIRGINIA E. ABRAMS.

128.    As a direct and proximate result of the death of VIRGINIA E. ABRAMS, in addition to those pecuniary damages to which VIRGINIA E. ABRAMS is entitled that survived her death, Plaintiff, BOB ABRAMS and the next of kin of VIRGINIA E. ABRAMS, have suffered damages, including the loss of love and affection, guidance and caretaking provided by VIRGINIA E. ABRAMS, and have further incurred tremendous grief, sorrow, and other mental suffering, all as a result of the death of VIRGINIA E. ABRAMS.

129.    At the time of their deaths, MATTHEW MURPHY and MARLEEN E. MUPRHY were survived by their next of kin, who have been damaged as a result of their deaths.

130.    As a direct and proximate result of the death of MATTHEW MURPHY and MARLEEN E. MUPRHY, in addition to those pecuniary damages to which MATTHEW

MURPHY and MARLEEN E. MUPRHY are entitled to that survived their deaths, the next of

kin of MATTHEW MURPHY and MARLEEN E. MUPRHY, have suffered damages, including

the loss of love and affection, guidance and caretaking provided by MATTHEW MURPHY and

MARLEEN E. MUPRHY, and have further incurred tremendous grief, sorrow, and other mental

suffering, all as a result of the death of MATTHEW MURPHY and MARLEEN E. MUPRHY.

131.    Plaintiffs respectfully request that this Court enter judgment on behalf of the

respective Estates and against the Defendants for the injuries and damages resulting from the

deaths of VIRGINIA E. ABRAMS, MATTHEW MURPHY, and MARLEEN E. MURPHY, and

for costs of suit incurred herein, and for such other or further relief as the Court deems just.

**Third Count**
**Survival Action**
**(VIRGINA E. ABRAMS, MATTHEW MURPHY, MARLEEN E. MURPHY)**

132.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if

fully set forth herein.

133.    Plaintiffs bring this cause of action pursuant to the Illinois Probate Act, 755 ILCS

5/27-6 and seeks all damages allowed that survive as a result of the personal injuries suffered by

VIRGINIA E. ABRAMS, MATTHEW MURPHY, and MARLEEN E. MURPHY up until the

time of their deaths.

134.    As a further direct and proximate result of one or more of the foregoing negligent

acts or omissions by the Defendants, VIRGINIA E. ABRAMS, MATTHEW MURPHY, and

MARLEEN E. MURPHY, sustained great bodily injury up until the time of their deaths.

135.    As a further direct and proximate result of the collision described above,

VIRGINIA E. ABRAMS, MATTHEW MURPHY, and MARLEEN E. MURPHY suffered

traumatic injuries, all of which caused them tremendous pain, suffering, and disfigurement up until the time of their deaths.

136.    Plaintiffs respectfully request this Court enter judgment on behalf of VIRGINIA E. ABRAMS, MATTHEW MURPHY, and MARLEEN E. MURPHY for the injuries and damages they suffered up until the time of their deaths and against the Defendants, and for costs of suit incurred herein, and for such other or further relief as the Court deems just.

## Fourth Count
## Loss of Consortium – (BOB ABRAMS)

137.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

138.    As a consequence of the car accident further described above, VIRGINIA E. ABRAMS sustained significant and permanent injuries, including death.

139.    Before suffering the injuries resulting from the accident, VIRGINIA E. ABRAMS was able to and did perform all the duties of a wife and did perform these duties, including but not limited to maintaining the home, providing love, companionship, affection, society, sexual relations, moral support, and solace to her husband, plaintiff BOB ABRAMS.

140.    BOB ABRAMS has suffered and continues to suffer from loss of society and consortium as a result of the death of his wife, VIRGINIA E. ABRAMS.

## Fifth Count
## Family Expense Act

141.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

142.     As a further direct and proximate result of one or more of the foregoing negligent acts or omissions by the Defendants, the Plaintiffs and Plaintiffs' decedents sustained severe and traumatic injuries, including death.

143.     As a further direct and proximate result of the injuries suffered by the Plaintiffs and Plaintiffs' decedents, the Plaintiffs and Plaintiffs' decedents were hospitalized for said injuries which caused them to incur medical expenses in the past and for which they may incur expenses in the future.

144.     As a direct and proximate result of the injuries and damages suffered by the Plaintiffs and Plaintiffs' decedents, the Plaintiffs herein seek reimbursement for said expenses pursuant to the Family Expense Statute, 750 ILCS 65/15.

145.     Plaintiffs respectfully request that this Court enter judgment against the Defendants, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), for all of the expenses incurred by the Plaintiffs and Plaintiffs' decedents pursuant to the Family Expense Statute, 750 ILCS 65/15, and for costs of suit incurred herein, and for such other or further relief as the Court deems just.

**Sixth Count**
**Negligent Hiring and Retention**
**(Against FedEx Ground & Hard Drive)**

146.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

147.     Defendants FedEx Ground and Hard Drive knew or should have known that Defendant Pino had a particular unfitness for the position so as to create a danger of harm to third persons, including Plaintiffs and Plaintiffs' decedents, and the public at large.

148.    Specifically, FedEx Ground and Hard Drive knew or should have known that, as early as July 2013, and at all relevant times herein, Defendant Pino was not qualified to drive a commercial motor vehicle pursuant to 49 CFR § 391.11.

149.    Such particular unfitness was known or should have been known to FedEx Ground and Hard Drive at the time of Pino's hiring and/or retention, but no later than July 2013.

150.    This particular unfitness proximately caused injury to Plaintiffs and Plaintiffs' decedents.

151.    Specifically, the proximate cause of the injuries to Plaintiffs and Plaintiffs' decedents was the negligence of Fedex Ground and Hard Drive in hiring and/or retaining the FedEx Truck to Pino at all relevant times, including the date of the accident, despite knowing, or being charged with the knowledge, that Pino was unfit and/or unqualified to drive a commercial motor vehicle, thereby causing him to be operating the FedEx Truck at the time of the accident.

152.    Plaintiffs respectfully request that this Court enter judgment on behalf of the Plaintiffs and against the Defendants, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), for the injuries and damages sustained by the Plaintiffs, and for costs of suit incurred herein, for pre- and post-judgment interest as provided by law, for punitive damages, and for such other or further relief as the Court deems just.

## **DEMAND FOR A JURY TRIAL**

Plaintiffs hereby demand a jury trial as to all issues so triable as a matter of right, pursuant to F.R.C.P. 38(b)(1) and 38(c).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand upon Defendants:

a.      actual, compensatory and statutory damages;

b.      punitive damages as allowed by law;

c.      pre and post-judgment interest as allowed by law;

d.      injunctive relief;

e.      an award of attorneys' fees as allowed by law;

f.      an award of taxable costs; and

g.      any and all such further relief as this Court deems just and proper.


Respectfully submitted,

By:     Benedict P. Morelli
        **MORELLI LAW FIRM, PLLC**
        N.Y. Bar No.: 1060441
        bmorelli@morellilaw.com
        David Sirotkin
        N.Y. Bar No.: 4891339
        dsirotkin@morellilaw.com
        Perry Fallick
        N.Y. Bar No.:
        pfallick@morellilaw.com
        Alexander Morelli
        N.Y. Bar No.:
        armorelli@morellilaw.com
        777 Third Avenue, 31st Floor
        New York, New York 10017
        Tel:  (212) 751-9800
        Fax: (212) 751-0046

         /s/ David Cates
        David Cates, #6289198
        CATES MAHONEY, LLC
        216 West Pointe Drive, Suite A
        Swansea, IL 62226
        Telephone:     618-277-3644
        Facsimile:     618-277-7882
        Email:         dcates@cateslaw.com

        *Attorneys for Plaintiffs*

Date: May 13, 2021

23

**<u>PROOF OF SERVICE</u>**

The undersigned hereby certifies that a true copy of the foregoing was filed electronically with the Clerk of the Court and served via the Court's electronic filing system this 13th day of May, 2021 to all counsel of record.

By: <u>/s/ David Cates</u>