UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BOB ABRAMS, JANICE SMART, and
ANGIE SUNDHAUSEN,

       Plaintiffs,

       v.

FEDEX GROUND PACKAGE SYSTEM,
INC., ASLLAN NMI PINO, HARD DRIVE
EXPRESS, INC.

       Defendants.

Case No. 3:19-cv-01391-JPG

## MEMORANDUM AND ORDER

**I.     Introduction**

This matter comes before the Court on two motions for partial summary judgment (Doc. 78) and (Doc. 80) and two motions to exclude testimony (Doc. 83) and (Doc. 126). Defendants FedEx Ground Package System, Inc. ("FedEx Ground") and Hard Drive Express, Inc. ("Hard Drive") (collectively, "Defendants") filed two motions for partial summary judgment. The first motion is for partial summary judgment on Plaintiffs Bob Abrams ("Abrams"), Janice Smart ("Smart") and Angie Sundhausen ("Sundhausen"), (collectively, "Plaintiffs") Negligent Hiring and Retention Claim pursuant to Federal Rule of Civil Procedure 56. Plaintiffs filed their response at (Doc. 96). Defendants' second motion is for partial summary judgment on Plaintiffs' Prayer for Punitive Damages Pursuant to Federal Rule of Civil Procedure 56. Plaintiffs filed their response at (Doc. 97).

Defendants also filed two motions to exclude the testimony and opinions of Erik Gaull (Doc. 83) and Lew Grill (Doc. 126). Plaintiffs responded at (Doc. 98) and (Doc. 131).

For the reasons stated, the Court DENIES Defendants' Motions for Partial Summary

Judgment. The Court GRANTS Defendants' Motion to Exclude the Testimony and Opinions of Erik Gaull and GRANTS in part and DENIES in part Defendants' Motion to Exclude the Testimony and Opinions of Lew Grill.

## II.    Factual Background

In support of Defendants' motions for partial summary judgment, Defendants filed a Statement of Undisputed Material Facts (Doc. 82). Plaintiffs filed their response and Counter-Statement to Defendants' Undisputed Material Facts (Doc. 99).

The accident underlying this cause of action occurred on July 20, 2019 (Doc. 82 at ¶ 1). On that date, a FedEx Truck, driven by Defendant Asllan Pino ("Pino") was driving eastbound on Interstate 70 in Effingham County, Illinois. *Id*. Plaintiffs stopped behind a semi during standstill traffic. Pino was operating a tractor owned by Hard Drive and was hauling a trailer owned by FedEx Ground. *Id*. at ¶ 2. Pino had been working for FedEx Ground for approximately seven years and for Hard Drive (a contract service provider) since 2015. Pino slammed on the brakes, swerved into the concrete median, and struck Plaintiffs, who were sandwiched between the two semis. Several family members - Virginia E. Abrams, Matthew Murphy, and Marleen E. Murphy—were killed. Plaintiffs Bob Abrams and Janice Smart survived.

Pino, a native Albanian speaker, was hired by Hard Drive in 2015. *Id*. at 4-5. During the course of Pino's employment, he had no disciplinary issues, drug issues, or medical issues. *Id*. at 6-7. Pino had a valid Commercials Driver's License. *Id*. at 6.

In 2013, FedEx Ground gave Pino an English Assessment. *Id*. at 9. FedEx Ground began giving all its truck drivers a one-time English Assessment in an attempt to verify drivers were qualified to drive commercial motor vehicles pursuant to 49 CFR § 391.11[1] (Doc. 99 at CS ¶ 14).

---

[1]    FMCSR §391.11(b)(2) requires a commercial driver "[c]an read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English

While the English Assessment was not required by the Federal Motor Carrier Safety Regulations ("FMCSR"), FedEx Ground administered these tests to establish compliance. (Doc. 82. at ¶ 10). Three assessors administered the test on Pino where they verbally asked five questions from a list of nine (Doc. 99 at CS ¶¶ 22-25). Multiple FedEx Ground employees testified that they did not believe Pino failed the English Assessment. *Id*. at 11-12. This test was pass/fail and the passing grade was an average of "3." *Id*. While a FedEx Ground employee who administered the test gave Pino a "2.2" (failing grade), he later crossed out and gave Pino a 3. (Doc. 99 at R ¶ 14).[2] Another assessor gave Pino a "3" and another did not write Pino's average score, *id.* at CS ¶ 49, but testified that he believed Pino did not fail the assessment (Doc. 82 at ¶ 15). If a driver were to fail the English Assessment, they would have been placed on "inactive safety" status and prohibited from driving commercial motor vehicles (Doc. 99 at CS ¶ 36). The parties are in dispute whether Pino actually passed the English Assessment, whether FedEx Ground believed Pino failed the assessment, and whether or not a re-test was required.

Dave Griffin, a special agent safety investigator at the FMCSR, and defense expert, testified that Pino was a qualified driver at the time of the accident (Doc. 82 at ¶ 16). Specifically, Griffin stated that because Pino was able to "successfully pass the CDL [commercial driver's license] skills test, knowledge test, and the two endorsements, specialized endorsements, had been determined qualified by FedEx Ground, and had been working for seven years at FedEx Ground…" he was qualified. *Id*. at ¶ 17. He also testified that *if* Pino did fail a safety test, he should not have been permitted to operate a commercial motor vehicle (Doc. 99 at R ¶ 16). FedEx Ground never retested Pino with an English Assessment.

---

language, to respond to official inquiries, and to make entries on reports and records."
[2]       Plaintiffs submit responses and counter-statements to Defendants' Statement of Undisputed Material Facts. Plaintiffs' responses will be referred to as (Doc. 99 at R ¶) and counter-statements will be referred to as Doc. 99 at CS at ¶).

While Pino admits he speaks a "little bit," of English *id.* at R ¶ 16, a number of individuals who worked with and around Pino believe that his English was adequate. (Doc. 82 at ¶¶ 19-31). These individuals range from various managers that spoke with and received writing materials from Pino (including logs, and odometer sheets), Hard Drive's business contact with FedEx Ground, and owners. *Id.*

Following the accident, Pino received two citations by police (Doc. 99 at R ¶ 32). According to the police report, Pino was unable to effectively communicate in English with officers at the scene. *Id.* at CS ¶ 12. These citations were for (1) "Commercial Motor Vehicle Unqualified Driver, Speak/read English," (Doc. 82 at ¶ 32), and (2) failure to reduce speed to avoid an accident (Doc. 99 at R ¶ 32). On June 16, 2020, Pino appeared on these citations in the Circuit Court of Effingham County, Illinois, where he was represented by counsel. (Doc. 82 at ¶ 33). Police issued the first citation because they believe Pino was operating the commercial motor vehicle as an unqualified driver pursuant to FMCSR, 49 CFR §391.11(b). (Doc. 99 at R ¶ 32). On June 16, 2020, Pino was found guilty of the offense. The Court found, as shown in its docket entries, "[t]hese tickets are petty offenses and were not willful violations." (Doc. 82 at ¶ 33).

After the accident, on August 13, 2019, FedEx Ground received a violation from the Department of Transportation for permitting Pino to drive a commercial motor vehicle in violation of FMCSR §391.11(b)(2). (Doc. 99 at CS ¶ 660. FedEx Ground believed that Pino spoke English "fine" and the citation came after he "got into a horrific accident and was in a state of shock. English is not his first language and he reverted back to his native language." *Id*. at ¶ 67. Additionally, after the accident, FedEx Ground received a violation from the Department of Transportation under the Compliance, Safety and Accountability program for permitting Pino to

drive a commercial motor vehicle in violation §391.11(b)(2). *Id*. at 66.

In December 2019, Plaintiffs, on behalf of themselves and their deceased family members, sued Defendants in this Court. Defendants now move for partial summary judgment.

## III.   Law and Analysis

### a.   Motions for Summary Judgment

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Spath v. Hayes Wheels Int'l–Ind., Inc*., 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). Thus, the Court construes evidence and draws all reasonable inferences in favor of Plaintiffs.

On summary judgment a court may not make credibility determinations or weigh the evidence, because these are tasks for a factfinder. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Betaco, Inc. v. Cessna Aircraft Co*., 32 F.3d 1126, 1138 (7th Cir.1994). In evaluating a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir. 1994).

### 1.   Negligent Hiring and Retention Claim

Plaintiffs' Second Amended Complaint alleges a claim against Defendants FedEx Ground and Hard Drive for Negligent Hiring and Retention. Defendants argue that this claim fails as a matter of law (Doc. 79).

The Court here will interpret state law "to determine how the state's highest court would rule." *Anicich v. Home Depot U.S.A., Inc*., 852 F.3d 643, 649 (7th Cir. 2017). "Illinois law recognizes a cause of action against an employer for negligently hiring, or retaining in its employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons." *Van Horne v. Muller*, 185 Ill.2d 299, 705 N.E.2d 898, 904 (Ill. 1998). "An action for negligent hiring or retention of an employee requires the plaintiff to plead and prove (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury." *Id*. Because "liability arises in this context when a particular unfitness of an employee gives rise to a particular danger of harm to third parties," *id*. at 905, a plaintiff must establish "a sufficient nexus between the particular alleged unfitness of [the employee] and the injury suffered by plaintiff." *Id*. "The particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Id*. at 906.

Defendants first argue that Plaintiffs cannot establish a sufficient nexus between the alleged unfitness of Pino and their injuries (Doc. 79, p. 4). Defendants argue that Plaintiffs cannot prove that Pino's alleged unfitness, his alleged failure to read English, caused the accident (Doc. 79, p. 5). In fact, Defendants state the record is clear that the accident occurred because Pino failed to stop when he came upon stopped or slowed traffic. *Id*. Plaintiffs, in response, state that this issue was already litigated by this Court at the pleading stage (Doc. 96, p. 4). Additionally, Plaintiffs state that it was Defendants' direct liability, hiring and retaining Pino for 6 years, despite being on notice he was an unqualified driver) is the cause of the accident.

The Court stated in a Memorandum and Order regarding Plaintiff's Motion to Amend the Complaint to add the Negligent Hiring and Retention Claim:

> [T]he defendants' argument misses the mark: The question is not whether Defendant Pino's poor English skills proximately caused the accident. Rather, it is whether Defendants FedEx Ground and Hard Drive Express were negligent for even hiring Defendant Pino and putting him on the road in the first place—given his below-passing scores and despite Defendant FedEx Ground's policies and government regulations.

(Doc. 67, p. 11).

The Court believes it was "plausible" Defendant Pino would not have been on the road that day had it not been for their "negligent employment decisions" during the liberal pleading stage. *Id.* While, the Supreme Court of Illinois noted in *Van Horne*, "the proximate cause of the plaintiff's injury is the employer's negligence in hiring or retaining the employee, rather than the employee's wrongful act,"[3] the Court believes this sentence was meant to distinguish between negligent employment and *respondeat superior*. 705 N.E.2d at 904.

Defendant Pino's particular alleged unfitness is his ability to speak English. Defendants believe the question is whether or not Pino's alleged unfitness (his alleged inability to read English) proximately caused Plaintiffs' injuries. Plaintiffs believe the question is whether Defendants negligent hiring (putting Pino on the road while being on notice for his deficient English abilities) proximately caused Plaintiffs'' injuries. The Courts believe, at the summary judgment phase, the former question is the correct one. Many courts since *Van Horne* have correctly interpreted this issue. *See Anicich*, 852 F.3d at 654 (defendant's particular unfitness was aggressive behavior towards women but letting the jury decide the question of whether a

---

[3]     The Defendants dedicate an entire section to this sentence of their brief (Doc. 79, pp. 10-15). The Court believes the *Van Horne* decision used this sentence to distinguish from the former sentence, i.e. "[a]n employer's direct liability for negligent hiring and retention is distinct from its *respondeat superior* liability for the acts of its employees." 705 N.E.2d at 904. The Court will note that the most recent Seventh Circuit decision applying the *Van Horne* decision did not cite this sentence anywhere in its decision in its proximate cause analysis.

reasonable employer could have predicted some violence or foreseen murder).

Here, while it is somewhat attenuated that it was *entirely* foreseeable any issues with English proximately caused Plaintiff's injuries, the Court finds it is reasonable that Defendants could have foreseen "some harm" as a result of an alleged failure to adhere to "policies and government regulations." "In order to satisfy the foreseeability component, it is not necessary that a defendant must have foreseen the precise nature of the harm or the exact manner of occurrence; it is sufficient if, at the time of the defendant's action or inaction, *some harm* could have been reasonably foreseen." *Anicich*, 852 F.3d at 654 (applying Illinois law). *Regions Bank v. Joyce Meyer Ministries, Inc*., 383 Ill.Dec. 767, 15 N.E.3d 545, 552 (2014*)* (emphasis added)*; see also Rowe v. State Bank of Lombard*, 125 Ill.2d 203, 126 Ill.Dec. 519, 531 N.E.2d 1358, 1369 (1988).

More specifically, proximate cause has two components: cause in fact and legal cause. *Inman v. Howe Freightways, Inc*., 2019 IL App (1st) 172459, ¶ 62, 130 N.E.3d 458, 476. Cause in fact examines the "reasonable certainty" that defendant's conduct caused the injury. *Id*. Under the "but-for" test, a defendant's conduct is a cause in fact of the injury if the injury would not have occurred absent defendant's conduct. *Turcios v. DeBruler Co*., 392 Ill.Dec. 541, 32 N.E.3d 1117, 1124 (Ill. 2015). Alternatively, a "substantial factor" test is used when there are multiple factors that may have combined to cause the injury. *Kramer v. Szczepaniak*, 428 Ill.Dec. 702, 123 N.E.3d 431, 439 (Ill. App. Ct. 2018). A defendant's conduct is a "cause in fact" of the injury if it was a material element and a substantial factor in bringing about the injury. *Young v. Bryco Arms*, 213 Ill. 2d 433, 436, 821 N.E.2d 1078, 1086 (2004). The Defendants argue that the "record does not include any evidence" the accident was caused by Pino's inability to speak English (Doc. 79, p. 13). However, Plaintiffs put forth evidence, Department of Transportation

violation notices directed to Defendants, a police report, and traffic citations after the incident, that support the connection between the alleged unfitness and the accident. The Court will let a jury decide whether Plaintiffs put forth *enough* evidence on whether this connection rises to the level of proximate cause under Illinois law. Viewing evidence in favor of Plaintiffs, this Court cannot say as such as a matter of law.

Legal cause requires an analysis of foreseeability and whether the injury is the type of injury a reasonable person would see as a "likely result" of his or her conduct. *Inman*, 2019 IL App (1st) 172459, ¶ 62, 130 N.E.3d at 476. While the Defendants are correct that one must distinguish between the cause of an injury and a condition that merely made the injury possible, *id* at 477, this is a "context-dependent inquiry." *Id*. 479 (Court finding a lack of reflective triangles being the cause of the accident not *completely* speculative, as plaintiff presented some evidence through its expert that had triangles been used, the collision could have been avoided). Additionally, whether an injury is "reasonably foreseeable" is an objective test, not a subject one. *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 34, 129 N.E.3d 1167, 1177. The Illinois Supreme Court has reviewed the issue of proximate cause and initially noted that the cause-condition dichotomy was merely another way of presenting the cause-in-fact analysis. *Inman*, Inc., 2019 IL App (1st) 172459, ¶ 67, 130 N.E.3d at 477. Evidence presented after the scene is informative for this court; enough to allow a jury to determine whether Defendants created the condition or the cause.

Defendants argue that Pino speeding was an intervening cause, enough to break proximate cause. "Where there is an intervening act by a third person, the test we apply is whether the first wrongdoer reasonably might have anticipated the intervening cause as a natural and probable result of the first party's own negligence." *Avalos v. Pulte Home Corp*., 474 F. Supp. 2d 961, 968 (N.D. Ill. 2007) (internal citations omitted). At the heart of this analysis is

whether the intervening cause is foreseeable to the defendant. *Id*. at 968-69. The inquiry here is whether Defendants FedEx Ground and Hard Drive might have anticipated the intervening cause, Pino driving too fast or driving dangerously, as a result of them their alleged negligence. *Mack v. Ford Motor Co*., 283 Ill.App.3d 52, 60, 218 Ill. Dec. 465, 669 N.E.2d 608, 615 (App.Ct.1996) (considering as a possible intervening cause, "whether either or both [third-party drivers] were driving too fast for conditions and whether each should have avoided colliding with the other vehicle," and stating that "the law is clear that conduct does not become an unforeseeable intervening cause solely because it violates the law") (citations omitted). The Court will let a jury determine whether there was enough evidence that Defendants knew Pino was unfit and unqualified, and therefore could have foreseen such actions.

The Court is careful. While the Court agrees that "[w]hile all accidents are to some extent remotely foreseeable" and does not want to create *per se* liability to employers whenever drivers are on the road and cause accidents, the Court believes there is more here. *Abrams v. City of Chicago*, 211 Ill. 2d 251, 262, 811 N.E.2d 670, 677 (2004) (stating it was not foreseeable that a refusal to send ambulance when labor pains are 10 minutes are apart would result in plaintiff's driver running a red light at the same time that a substance-impaired driver was speeding through the intersection on a suspended license).

As discussed below, there are questions as to whether FedEx Ground and Hard Drive were on notice that they had a driver who was "unqualified." There are questions as to whether, even if many years passed without incident, Pino, being arguably unqualified, continued to create foreseeable danger. The facts that transpired after the incident change this Court's analysis from an attenuated possibility, as to one the jury should evaluate. Defendant Pino was cited at the scene for his inability to speak English by police officers, Defendants FedEx Ground and Hard

Drive received a violation from the Department of Transportation after the accident for permitting Pino to drive a commercial motor vehicle in violation of §391.11(b)(2), and a judge adjudicated Pino guilty of the petty offense of being an unqualified driver at the time of the accident. If the police at the scene of the accident, Department of Transportation, and a traffic judge were able to find a relationship between Pino's failure to speak English and the incident in question, the Court finds it reasonable that a jury may find the fact Defendant Pino's failure to speak English, and thus being arguably unqualified to drive on the road, was a reasonably foreseeable cause of Plaintiffs' injuries. The Court will allow the jury to determine the weight of this evidence.

Again, the Court is careful. Defendants argue that Plaintiffs conflate "unqualified" under FMCSR as being unqualified as an employee of Hard Drive (Doc. 110, p. 5). The Court agrees. The Court does not believe that Pino being "unqualified" pursuant to statute makes him an unqualified driver on the road. The Court views this as a factor amongst all others to give rise to potential liability. It cannot *prove* liability, but the Court treats this evidence like a contradictory witness or other type of evidence, which the Court will draw in favor of Plaintiff.

The Court finds, based on the evidence presented, that reasonable minds could differ. Specifically, the Court believes the reasonable minds could differ as to whether or not Pino could speak English sufficiently to perform his job as many of his co-workers have testified he could. On the other hand, the police report after the accident stated he was unable to speak English with officers. Additionally, he received a citation for failing to speak English and was found guilty of a petty offense for being an unqualified driver by being unable to speak English at the time. The Court, at the summary judgment phase, must give reasonable inferences in favor of Plaintiffs.

Additionally, reasonable minds could differ as to whether or not Pino passed or failed his

English Assessment. While his assessors testified under oath that he passed, a jury could find that crossing out a failing grade in favor of an average score demonstrates that he did not pass. Reasonable minds could therefore differ on whether or not Defendants were on notice that Pino could not speak English. Again, at this stage, the Court must give reasonable inferences in favor of Plaintiffs.

Reasonable minds could differ as to whether or not Pino's alleged particular unfitness (i.e., failure to read and speak English) in his job as a commercial driver with FedEx Ground could have caused some harm; enough to allow the negligent hiring and retention claim to go to a jury. The Court believes reasonable minds could differ as to whether or not *some harm* could have been foreseen by Defendants, if not the exact harm that transpired. Especially, because the Court notes, that the issue of proximate cause and foreseeability is typically a matter for the jury. *Anicich*, 852 F.3d at 654. However, the Court will strongly note, at trial, when the facts proven at trial do not legally entitle the Plaintiffs to a recovery "the court may rule on proximate cause as a matter of law" at the close of evidence. *Inman*, 2019 IL App (1st) 172459, ¶ 62, 130 N.E.3d at 476. Defendants may make their motion to object to this claim at the close of evidence.

"[O]nly rarely are the facts so clear that the court can resolve the issue [of proximate cause] as a matter of law." *Palay v. United States*, 349 F.3d 418, 432–33 (7th Cir. 2003). The Court does not find these facts *so clear* to find in favor of Defendants as a matter of law.

The Court hereby DENIES Defendants' Motion for Partial Summary Judgment on Plaintiffs' Negligent Hiring and Retention claim.

### 2. Punitive damages

In determining whether to impose punitive damages, the trial court must first determine as a matter of law "whether the cause of action in general and the facts of the particular case

provide sufficient proof of aggravated circumstances to warrant submitting the issue to the trier of fact. If the facts of the case legally justify an award of punitive damages, the issue is then submitted to the trier of fact." *Wolinsky v. Kadison*, 2013 IL App (1st) 111186, ¶ 93, 987 N.E.2d 971, 989 (cleaned up).

"While the amount of punitive damages is a question for the jury, the initial decision of whether punitive damages may be awarded in a particular case is a matter of law for the trial judge to decide." *Ainsworth v. Century Supply Co.*, 295 Ill. App. 3d 644, 651, 693 N.E.2d 510, 515 (1998). Punitive damages serve to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future. *Fogt v. 1-800-Pack-Rat, LLC*, 2017 IL App (1st) 150383, ¶ 81, 74 N.E.3d 186, 202. The conduct must not just be willful, but that the "defendant acted willfully or with such gross negligence to indicate a wanton disregard for the rights of others." *Id.* 204.

Upon a review of the record, the Court is not willing to foreclose imposition of punitive damages at this point. The Court must view all reasonable inferences in favor of Plaintiff. A jury could determine that in 2013, assessors of Pino's exam changed his score to allow him to pass when he failed, a jury could determine that Defendants were on notice that they sanctioned a driver who could not adequately speak English, and a jury could determine Defendants could have been further on notice as to his English skills while dealing with his co-workers. A jury could determine Defendants were subsequently in violation of internal policies and government regulations, and a jury could determine that not allowing adequate compliance of CDL and FMCSR, including § 391.11(b)(2) could have been gross negligence that resulted in multiple deaths. However, a jury could weigh the evidence and very clearly see it the opposite way. The jury could find that this amounts to sheer negligence and such a punishment is not justified.

Viewing all inferences in favor of Plaintiffs at this juncture and the Court's inability in making creditability determinations, the Court will let punitive damages move forward.

Defendants state that violations of self-imposed rules of internal guidelines are insufficient to prove willful and wanton conduct. (Doc. 81, p. 7). The Court disagrees. "[A]lthough a violation of an internal rule will not automatically constitute willful and wanton conduct, a jury may consider it along with other evidence in reaching a determination of willful and wanton conduct. *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 405, 881 N.E.2d 430, 457 (2007). Illinois courts note that the jury must weigh the evidence to determine willful and wanton conduct. The Court must be clear. It rejects the idea that sheer violation of an internal rule constitutes "willful and wanton conduct *per se*." *Id*. The Court believes more is here. Here, Defendants may not have just violated an internal rule but may have violated an internal rule intended to comply with a government regulation aimed at public safety.

Under Illinois law, even where an employer has admitted responsibility under *respondeat superior*, liability under negligent hiring and retention can be allowed to go to a jury where there are also allegations of "willful and wanton conduct." *Neuhengen v. Glob. Experience Specialists, Inc*., 2018 IL App (1st) 160322, ¶ 127, 109 N.E.3d 832, 862. Here, the Court will allow punitive damages go to a jury at this time.

However, the Defendants may renew their motion to foreclose punitive damages at the close of evidence. Upon review of the evidence, a Court may make a determination at that time as a matter of law. The Court hereby DENIES Defendants' Motion for Partial Summary Judgment on Plaintiffs' Prayer for Punitive Damages.

### b.  Daubert Motions

Pursuant to Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Defendants have moved to exclude or limit the testimony of two proposed expert witnesses: Erik Gaull and Lew Grill.

Rule 702 and *Daubert* provide the legal framework for the admissibility of expert testimony. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893-94 (7th Cir. 2011). Rule 702 requires that the district judge act as a "gate-keeper" who determines whether proffered expert testimony is "reliable and relevant before accepting a witness as an expert." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 741 (7th Cir. 2007) (internal citations omitted). *see also Daubert*, 509 U.S. at 589.

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Ortiz v. City of Chicago*, 656 F.3d 523, 536 (7th Cir. 2011).

Rule 702 and *Daubert* require the district court to engage in a three-step analysis before admitting expert testimony. The court must determine (1) "whether the witness is qualified"; (2) "whether the expert's methodology is scientifically reliable"; and (3) "whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue." *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (cleaned up).

The proponent of the expert bears the burden of demonstrating, by a preponderance of the

evidence, that "the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp*., 561 F.3d 698, 705 (7th Cir. 2009). District judges possess considerable discretion in dealing with expert testimony. *Carroll v. Otis Elevator Co*., 896 F.2d 210, 212 (7th Cir. 1990).

A witness is qualified as an expert if she has sufficient "knowledge, skill, experience, training, or education" relating to the subject matter of her testimony. *Demouchette v. Dart*, 2012 WL 6568232, at *3 (N.D. Ill. Dec. 14, 2012) (quoting Fed. R. Evid. 702).

As to reliability, the Court must ensure that a proposed expert's methodology is "scientifically valid," *Daubert*, 509 U.S. at 592–93, and that her conclusions are "based on sufficient facts or data," Fed. R. Evid. 702(b).  "The non-exclusive list of *Daubert* reliability factors for scientific evidence includes whether or not the theory or technique has been (1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field." *Lapsley v. Xtek, Inc*., 689 F.3d 802, 810 (7th Cir. 2012) (citing *Daubert*, 509 U.S. at 593–94). But this "list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141 (internal quotation marks omitted).

"Rule 702's requirement that expert opinions be supported by 'sufficient facts or data' means 'that the expert considered sufficient data to employ the methodology.'" *Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 808 (7th Cir. 2013) (internal citations omitted). Assuming there is "a *rational connection* between the data and the opinion," the "expert's reliance on faulty information is a matter to be explored on cross-examination; it does not go to admissibility." *Manpower*, 732 F.3d at 809 (internal citations omitted) (emphasis added). "Our system relies on cross-examination to alert the jury to the difference between good data and

speculation." *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 432 (7th Cir. 2013).

"[T]he law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 142, 119 S. Ct. 1167, 1171, 143 L. Ed. 2d 238 (1999); *see also Pansier*, 576 F.3d at 737; *Lewis*, 561 F.3d at 704–05. The Court's goal is "to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007). Its "focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Nonetheless, as the Supreme Court has recognized, "conclusions and methodology are not entirely distinct from one another," and while "[t]rained experts commonly extrapolate from existing data[,] ... nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Electric*, 522 U.S. at 146. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791–92 (7th Cir. 2008) (internal citations omitted). In short, "[i]t is critical under Rule 702 that there be a link between the facts or data the expert has worked with and the conclusion the expert's testimony is intended to support." *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003). Where that link is missing, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric*, 522 U.S. at 146.

Finally, the requirement that evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue "goes primarily to relevance." *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo,

non-helpful." *Id*. (cleaned up).

### a. Erik Gaull

Here, Plaintiffs disclosed Erik G. Gaull ("Gaull") as an expert witness pursuant to Fed. R.

Civ. P. 26(a)(2). Gaull testified regarding "the nature and severity of the crash, the difficulty of

the extrication, how extrications are conducted in major vehicle accidents, and the emotional

impact the crash and extrication had on the surviving Plaintiffs." (Doc. 83, Exhibit 1).

According to Gaull's expert report, Gaull's ultimate opinions are:

1) The crash itself and subsequent crushing and spinning of the SUV was a terrifying event.
2) The length of time of the extrication combined with the excessive noise, searing heat, condition and position of the SUV, inability of passengers to move, lack of responsiveness of loved ones known to be in the SUV, and pain from the injuries sustained combined to make the extrication process a truly terrifying ordeal for the surviving occupants of the SUV.
3) To Bob Abrams – knowing what he would have known as an paramedic himself – the extrication, lack of responsiveness of his loved ones in the SUV, the potential extent of his injuries and those of the other occupants of the SUV, and his need for aeromedical evacuation would likely have caused him extreme emotional duress.
4) To Janice Smart, who was entrapped and severely injured in the third row of the SUV, being able to see forward in the vehicle but unable to hear or see signs of life from the people in the second row for much the time and being extricated before Matthew Murphy or Virginia Abrams would likely have caused her extreme emotional duress.

(Doc. 83, Exhibit 2).

Gaull's expert report relied on crash reports, police reports, fire reports, other statements,

photographs and videos of the accident scene, weather records, and two journal articles.[4] Doc.

83, Exhibit 2). In coming to his conclusions, Gaull did *not* speak to or review testimony of the

surviving Plaintiffs – Bob Abrams and Janice Smart.

Defendants argue that Gaull's opinions are not relevant nor credible and should be

---

[4]      Root KS, et al., "Firefighter Noise Exposure During Training Activities and General Equipment Use," Journal of Occupational and Environmental Hygiene, 10:116-121 (2013). Arstilla V, "Time slows down during accidents," Frontiers in Psychology, 3:196 (2012)

excluded pursuant to Rule 702, 703, and principles set forth in *Daubert* (Doc. 83, p. 2). Plaintiffs respond by stating that Gaull's testimony will be important for a jury to "understand when considering the damages the Plaintiffs suffered such as physical pain and suffering, emotional pain and suffering and fear of impending death." (Doc. 98, p. 2-3).

The Court first evaluates whether or not Gaull is qualified. Gaull has forty years' experience as a paramedic and has previously testified as an expert regarding the standard of care for ambulance and emergency workers. Gaull has participated in at least 1,000 vehicle crash responses, and has had twenty years' experience as a fire-service trainer and administrator. The Court has also reviewed Gaull's resume. In light of Gaull's extensive experience as a paramedic, he is qualified.

The Court has concerns as to whether Gaull's methodology is reliable. As enumerated above, the Court looks to whether any Gaull's techniques or theories have been tested, subjected to peer review and publication, analyzed for known or potential error rate, or whether they are generally accepted within the specific scientific field. Applying these factors to Gaull, the Court does not find his methodology to reach the conclusions he draws, reliable or scientific enough to survive under the Rule 702 and *Daubert*.

Gaull states that "for someone trapped and unable to move, the lengthy extrication probably seemed interminable." (Doc. 83, Exhibit 2). Gaull states that the basis of his opinion is an article in the "Frontiers of Psychology." Gaull quotes a portion of this article to support his conclusion. "[P]eople who have survived accidents often report altered phenomenology including how everything appeared to happen in slow motion." (Doc. 83, Exhibit 2). However, the author admits "there has been little empirical research on the phenomenology of time passing by." Additionally, when asked about this basis during his deposition, Gaull did not know

whether or not this theory had been generally accepted in the psychology communities. Defendants argue that he is not qualified to testify regarding psychological phenomenon. Plaintiffs argue that while Mr. Gaull is not a psychologist, "he has been trained extensively by psychologists, psychiatrists, and social workers to understand the psychological trauma of victims of serious motor vehicle accidents. (Doc. 98, p. 5). The Court is unpersuaded. While Gaull may have been extensively trained by *other* psychologists, the Plaintiffs have not demonstrated that Gaull can speak to a psychological theory, especially one in which has not been quantified, as stated by the author of the article. Setting aside Gaull is not a psychologist, the Court is further concerned he cannot speak to whether or not this theory has been tested, peer reviewed, analyzed for known error rates, or whether it is generally accepted in the psychology community. Plaintiffs have not established that Gaull has the sufficient experience or knowledge to support this psychological opinion. *Demouchette*, 2012 WL 6568232, at *3.

The Court believes that Gaull bases much of his opinion on personal experiences and, therefore, extrapolates on what the deceased and injured "probably" felt or experienced during the ordeal. Gaull states that the sounds Abrams or Smart heard while trapped in the vehicle "were probably disorienting and scary reminders of the gravity of the situation in which Abrams and Smart found themselves." (Doc. 83, Exhibit 2). The basis of Gaull's opinion is his experience of "having been on scenes with helicopters, with more sirens of additional helicopters." *Id*. He additionally states that given "the totality of those circumstances, if I didn't know what was going on, I'd be terrified. And I'm guessing here, that if I were in a situation, even if I did know what was going on, I'd be scared." *Id.* Gaull is extrapolating from his experience as a paramedic and concluding that from that experience, those involved in crashes must be terrified. Additionally, Gaull furthers his opinion that this is a terrifying event based on

when he had a bad anaphylactic reaction and being scared with the "lights and siren[s]." These bases simply do not meet the rigor required of experts in this Court. There is a large "analytical gap" between data and the conclusion proffered that the Supreme Court has cautioned district courts against allowing in. *General Electric*, 522 U.S. at 146. It is this type of "subjective belief or unsupported speculation" that *Daubert* court has cautioned as unreliable and inadmissible. *Daubert*, 509 U.S. at 590.

   While the Court believes that Gaull's opinions may be helpful a trier of fact, it would be more helpful to hear how terrifying this event was, from those that were firsthand responders, witnesses, or survivors of the accident. The Court is unclear as to why a trier of fact would need this proposed expert's opinions that this event was likely "terrifying" for Plaintiffs when they can hear from the Plaintiffs themselves. Setting aside what this Court believes would be likely duplicative evidence, it is not necessary to put an expert on to assess pain and suffering. *See Rainey v. Taylor*, 941 F.3d 243, 253 (7th Cir. 2019).

   The Court believes that Plaintiffs will not be prejudiced by the Court excluding this expert. The Court believes there are no better people to conclude and describe the experiences of the crash, extrication, and emotional distress than the surviving Plaintiffs.

   The Court hereby GRANTS Defendants Motion to Exclude the Opinions of Erik Gaull.

**b. Lew Grill**

   Plaintiffs disclosed Lew Grill ("Grill") as an expert witness pursuant to Fed. R. Civ. P. 26(a)(2). Plaintiffs disclosed Grill as a trucking industry expert. Defendants argue that the following testimony of Lew Grill must be excluded for failing to meet the standards set by *Daubert* and Rule 702. Specifically, Defendants argue that the following opinions proffered by Grill must be excluded: "(1) Pino's English skills and FedEx Ground's evaluation

of them; (2) the cause of the accident, including Pino's driving in the seconds leading up to the accident and whether his English skills contributed to the crash; and (3) the sufficiency of FedEx Ground and Hard Drive's safety management systems." (Doc. 126, p. 7).

Defendants first argue that Grill's opinions on Defendant's English skills must be excluded. They argue that Grill is not qualified to evaluate Pino's English skills, Grill does not have a methodology in evaluating Pino's English skills, and such an opinion regarding Defendant's skills would not assist the jury (Doc. 126, p. 5-11). Plaintiffs respond by stating Grill is qualified – he has more than 40 years of experience in evaluating safe operating practices for truck drivers and motor carriers (Doc. 131, p. 12). While Defendants view the issue as evaluating Pino's English skills, Plaintiff views the issue as an evaluating Pino as a qualified driver pursuant to FMCSRs. Here, Grill is qualified in matters relating to truck driver training and safety, including the FMCSRs. While Defendants are correct that Grill is not a linguist, he is qualified to testify regarding compliance of safety regulations. One of those regulations delves into the abilities of drivers to have English skills. The Court finds Grill is qualified. Defendants are free to cross-example Grill regarding his experience and qualifications.

Defendants also argue Grill does not have a reliable methodology to evaluate Pino's English skills. (Doc. 126, p. 6-7). Plaintiffs state that this is hypocritical because Defendants' proposed expert, Dave Griffin, uses a similar methodology and similar experience in the field. Specifically, Plaintiffs state that Mr. Griffin used the same facts, data, and information, and came to different conclusions using his experience. (Doc. 131, p. 17-18). The Court does not have Mr. Griffin's methodology before it. The Court considers this the case of dueling experts. In a case of dueling experts, as this one is, it is left to the trier of fact, not the reviewing court, to decide how to weigh the competing expert testimony. *Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008);

*see also Spesco, Inc. v. Gen. Elec. Co.*, 719 F.2d 233, 237–38 (7th Cir. 1983) ("It is within the province of the jury to determine which of two contradictory expert statements is deserving of credit."). However, the Court cautions these experts. They may not testify as to the *relevancy* of the evidence on which another expert relies as that is for the Court to decide relevancy. *Garrit v. City of Chicago*, No. 16-CV-7319, 2022 WL 124554, at *11 (N.D. Ill. Jan. 13, 2022) (Court finding that testifying as to relevancy on which another expert relies is a question for the Court, just as credibility is a question for the jury).

Defendants state that Grill did not interview Pino and did not administer English tests for Pino. The Court agrees with Plaintiffs that Defendants do not cite to any caselaw that requires an expert conduct such a test. (Doc. 126, p. 7); (Doc. 131, p. 18). Defendants state that Grill's opinion also ignores relevant evidence (Doc. 126, p. 7-8). Defendants are free to vigorously cross-examine Grill regarding his failure to take into account evidence this Court deems relevant. *Lapsley*, 689 F.3d at 805 (citing *Daubert*, 509 U.S. at 596). The jury will weigh Grill and Mr. Griffin's testimony after hearing all the evidence.

The Court cautions Grill in two different respects. First, in light of the witnesses that testify that they could converse with Pino over the many years they worked with him, the Court cautions Grill (Doc. 126, p. 8). Grill cannot testify to and has no basis to speculate as to those conversations since he is not a party to them. Additionally, Grill is not permitted to speculate as to whether or not Defendants rightfully or wrongfully rescored, doctored, or otherwise was incorrect in scoring Grill. *Navarro v. Hamilton*, No. 516CV1856CASSPX, 2018 WL 4156603, at *3 (C.D. Cal. Aug. 27, 2018) (Grill may not testify that defendant Hamilton's logbook was "falsified"). Again, as stated many times throughout this opinion, this is a question of fact. Grill was not present during the testing. The Court believes an expert testifying regarding a credibility

issue in contradiction of witnesses who were present or administered the test would be improper.

Defendants additionally state that Grill's opinion that Pino and Defendants FedEx Ground and Hard Drive violated § 391.11(b)(2) must be excluded because it invades the province of the judge and the jury (Doc. 126, p. 10). Specifically, Defendants cite to *Bammerlin*, which held that the district court erred in allowing an expert to explain to a jury what *he thinks* federal regulations require. *See Bammerlin v. Navistar Int'l Transp. Co*., 30 F.3d 898, 900 (7th Cir. 1994). The Court will echo the district court in a previous case that Grill testified in. "Plaintiff may present the relevant FMCSRs through Mr. Grill as this will assist the jury in understanding the standard of care in the trucking industry, an area with which they may not be familiar. Mr. Grill may not offer his interpretation of these regulations or expound on what they may require beyond what they state on their face." *Malburg v. Grate*, No. 11-14856, 2014 WL 4473786, at *4 (E.D. Mich. Sept. 9, 2014). The Court finds Grill cannot interpret or otherwise expound on the FMCSRs, as instructing the jury as to the law is in the Court's purview. Additionally, as stated above, the Court refuses to create *per se* liability here; any violation of the FMCSR does not prove liability. The Court views the FMCSRs at issue as "one piece of evidence" and do not determine the outcome of Plaintiff's claims. *Naeem v. McKesson Drug Co*., 444 F.3d 593, 610 (7th Cir. 2006) (distinguishing *Bammerlin*). Additionally, the Court will not strike Grill's testimony that Pino was *not* qualified under § 391.11(b)(2) when Mr. Griffin concludes that Pino was qualified under the same regulation.

Defendants next request that Grill's speculative opinions on accident causation be excluded (Doc. 126, p. 11). Specifically, Grill opines and concludes that Pino's English skills caused his driving decisions caused the accident. Grill viewed dash cam video and concluded that English skills caused him not to understand what was going on. (Doc. 126, p. 12). Plaintiffs

respond by stating that Grill uses his personal knowledge and experience and argues that training provided to Pino was deficient. He takes it a step further by stating training by FedEx Ground and Hard Drive would not have been effective since he could not read or understand English (Doc. 131, p. 19). The Court agrees that these contentions are unreliable. Grill cannot testify as to accident causation as it clearly speculative. This Court is not the only court to bar Grill's opinions regarding the same type of causation speculation. *See Lundborg v. Weiss*, No. 13 CV 955, 2015 WL 5722585, at *5 (N.D. Ill. Sept. 29, 2015) (prohibiting Grill's opinions that commercial driver likely fell asleep prior to the accident); *Castle-Foster v. Cintas Corp*. No. 2, No. CV419-139, 2021 WL 601877, at *15 (S.D. Ga. Feb. 16, 2021) ("Grill may not testify as to causation"); *Navarro*, No. 516CV1856CASSPX, 2018 WL 4156603, at *3 ("because an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law, Grill may not provide his opinion on the proximate causes of the accident") (cleaned up).

As stated above, causation is an issue for the jury. The Court is concerned that "[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)). The jury may watch the dash cam video and hear other testimony to reach their own conclusion as to what caused the accident. This Court is careful to allow substitution of an expert judgment for a jury's judgment.

Defendants next state that Grill's opinions that FedEx Ground and Hard Drive had insufficient safety management systems must be excluded (Doc. 126, p. 16). Defendants specifically state that Grill "cherry picks" raw data and creates an unreliable basis for a sweeping opinion that FedEx Ground's safety management systems were deficient. *Id*. at 16-17. Plaintiffs

respond by stating Mr. Griffin gives the same opinions and Grill uses historical data to show a systemic breakdown in safety management systems (Doc. 131, p. 21-22). At this juncture, the Court will allow Grill to testify to Defendants' safety management systems. The Court will let the jury weigh the testimony of both Grill and Mr. Griffin. Defendants may vigorously cross-example Grill as to the basis of his testimony and leave the jury to determine credibility of such data and conclusions. *Lapsley*, 689 F.3d at 805 (citing *Daubert*, 509 U.S. at 596) ("If the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with the familiar tools of vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.").

While the Court has some concerns regarding the relevance of such sweeping generalizations to apply to such a large carrier company, the Court acknowledges some of these issues may be difficult to tease as to appropriate and inappropriate testimony, as much of the evidence is yet to be presented at this stage. However, Defendants are free to allow their own expert to rebut these claims. The Court invites the parties to re-present such objections at trial and the Court may reexamine. However, at this juncture, the Court will not strike Grill's opinions regarding Defendant's safety management system, finding it meets the *Daubert* threshold.

Defendants state that Grill attempts to improperly introduce a heightened standard of care for Pino (Doc. 126, p. 18). Specifically, Defendants take issue with Grill's opinion that "[a]ll commercial motor vehicles require a higher performance standard in order to safety operate." Plaintiffs state that a "performance standard" is different than a "standard of care," whereby the former prefers to standards to "accomplish this standard of care are much different for truck drivers than operators for smaller vehicles." (Doc. 131, p. 23). The Court finds this confusing

and misleading. Grill may not testify as to what the standard of care should be. Grill cannot testify that Defendants failed to exercise due care and cannot testify as to what the standard of care should be. Citing a court in the Northern District of Illinois, "Mr. Grill may discuss the requirements and procedures of a commercial truck driver, as long as his opinions do not improperly instruct the jury on legal conclusions or the legal standard under Illinois law." *Lundborg*, 13 CV 955, 2015 WL 5722585, at *5.

Defendants lastly argue that they are concerned regarding many of Grill's proffered opinions regarding "amorphous" and additional duties or responsibilities Defendants had pursuant to the FMCSRs and other federal laws (Doc. 126, p. 19-20). As stated previously, Grill may testify as to the relevant FMCSR because it will assist the jury in *understanding* the standard of care in the trucking industry. However, "Mr. Grill may not offer his interpretation of these regulations or expound on what they may require beyond what they state on their face." *Malburg*, No. 11-14856, 2014 WL 4473786, at *4. Again, he may discuss the requirements and procedures of a commercial truck driver. *Lundborg v*, No. 13 CV 955, 2015 WL 5722585, at *5. Grill may not improperly testify as to a legal standard or amorphous additional duties beyond the legal standard. That is strictly within the purview of the Court to instruct the jury as to the law.

The Court hereby GRANTS in part and DENIES in part Defendants' Motion to Exclude the Opinions and Testimony of Lew Grill.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' Motion for Partial Summary Judgment on the Negligent Hiring and Retention Claim (Doc. 78) and DENIES Defendants' Motion for Partial Summary Judgment on Punitive Damages (Doc. 80). Additionally, the Court GRANTS Defendants' Motion to Exclude the Testimony and Opinions

of Erik Gaull (Doc. 83) and GRANTS in part and DENIES in part Defendants' Motion to Exclude the Testimony and Opinions of Lew Grill (126).


**IT IS SO ORDERED.**
**Dated: February 14, 2022**

**/s/ J. Phil Gilbert____**
**J. PHIL GILBERT**
**DISTRICT JUDGE**
